IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

ANDREW DAVID EASTER,

           Plaintiff,          Civil No. 08-6214-TC

        v.               ORDER

TIM MUELLER, et al.,

           Defendants.

COFFIN, District Judge.

Plaintiff was an inmate in the Linn County Jail on two occasions in 2008. He was placed on High Risk Offender ("HRO") status after a violent outburst directed at the jail's doctor after the doctor refused to prescribe a certain medication to treat plaintiff's mental illness. HRO status results in the loss of privileges that are available to the general jail population.

Plaintiff filed a Complaint (#2) alleging violations of his rights arising out of his incarceration seeking damages

1 - ORDER

and injunctive relief.[1]

Defendants moved for summary judgment (#23) and plaintiff filed a response (#30).

By Order (#37) entered July 7, 2009, plaintiff's Motion for Leave to Join Claims (#22) was construed as a motion to file a supplemental complaint and was allowed.  Plaintiff's Amended Complaint was filed as document (#38).[2] The court also denied defendants' Motion for Summary Judgment without prejudice. Order (#38).

On November 19, 2009, defendants filed a Motion for Summary Judgment (#50), a Memorandum in Support (#51) and a Concise Statement of Material Facts (#52).  Plaintiff did not file a response to defendants' motion with the court.  However, plaintiff apparently served a Response on the defendants.  On December 31, 2009, defendants filed a Reply in Support (#59).  Because it appeared that the court had not received plaintiff's Response to defendant's motion, defendants appended plaintiff's Response to their reply as Attachment 1.  See, Reply (#59) p. 1.  In a letter dated January 3, 2010, plaintiff advised the court that he intended to rely on his previous response to defendants' motion for

---

[1]In his Motion to Deny (#30) plaintiff concedes that he "lacks standing for an injunctive relief" and I deem taht claim voluntarily dismissed.

[2]Because plaintiff's motion to "join claims" was construed as a request to file a *supplemental* complaint, the claims alleged and the defendants named in the original complaint (#2) are still before the court.

summary judgment and "did not wish to offer any more arguments."

Plaintiff is proceeding pro se and is entitled to some latitude with respect to pleading matters. It is apparent that plaintiff served defendants with a Response to the motion for summary judgment but did not file a copy of that response with the court, or that for an unknown reason the response was not received by the court. Therefore, I deem plaintiff's Response appended to defendants' Reply as Attachment 1, as properly before the court, and as if filed by plaintiff. In other words, I have considered the arguments in Attachment 1 in deciding the matters before the court.

Plaintiff was sent the court's Summary Judgment Advice Notice on January 21, 2009, (#14) and on February 9, 2009, (#16). However, plaintiff has not submitted a response to defendants' Concise Statement(s) of Material Facts (#24) and (#52) or submitted any declarations or other admissible evidence. Accordingly, all of defendants' material facts are deemed admitted, <u>see</u>, Local Rule 56-1(f), and the court's factual findings are properly based on the un-controverted declarations and other evidence submitted by defendants. <u>See</u>, Local Rule 56-1(f).

The relevant facts are as follows.

Plaintiff was first incarcerated in the Linn County Jail on January 30, 2008 to serve a 30 day sentence for his conviction for Contempt of Court. After serving his sentence,

plaintiff remained in custody as a pretrial detainee on one count of Theft in the Second Degree and one count of Interference with a Police Officer.  Plaintiff was released from custody on April 1, 2008.

On May 23, 2008, plaintiff was booked into the Linn County Jail to serve a six month sentence for Theft in the Second Degree and a five day sentence for Interference with a Police Officer.  Plaintiff was released to the Oregon Department of Corrections custody on September 4, 2008.

On February 18, Dr. Robert Tilley, the jail physician, met with plaintiff to discuss plaintiff's complaint that he was being denied Geodon, a prescribed medication. When Dr. Tilley informed plaintiff that he would not prescribe Geodon for him, plaintiff became enraged, kicking a door and yelling profanity.  As a result of plaintiff's behavior, Sgt. Randall designated plaintiff as a High Risk Offender.  Plaintiff grieved this decision and it was upheld.

Plaintiff was on Level 1 from February 18 to March 18. He was allowed out of his cell 15 minutes every three days; he was not allowed to have any outside recreation; he was allowed to have personal and legal mail, ink pen, paper, and books in his cell; he received his meals in his cell through a food trap; he was not allowed visitors.  Plaintiff then "moved up" to Level 2 where he was allowed out of his cell for 30 minutes every two days and he was allowed to have visitors. Plaintiff's HRO status was evaluated every week and

4 - ORDER

fluctuated, with his privileges extended when his behavior improved and curtailed when his behavior deteriorated.

During his first incarceration, plaintiff filed a grievance because Sgt. Loshbaugh told him that inmates could not receive "outside publications," and that inmates on HRO status could not receive newspapers. Plaintiff was informed how to request books from the jail library and told that inmates on HRO were not allowed to receive newspapers because they had been turned into weapons in the past. Plaintiff was released on bail on April 1, 2008.

Plaintiff returned to the Linn County Jail on May 23, 2008, after the conviction referenced above. Sgt. Taylor placed plaintiff on Level 2 status where he remained until June 21. Plaintiff was then placed on Level 3 status where he was allowed out of his cell for one hour every day and allowed 30 minutes of outside recreation. Because of his behavior, plaintiff was placed on Level 2 status from June 29 to July 25. He was restored to Level 3 from July 25 to September 3.

During his second incarceration at the jail plaintiff filed a grievance because the law librarian had denied his request for certain Oregon Revised statutes that plaintiff requested to work on an appeal in one of his criminal cases. The grievance was denied because plaintiff had a public defender to assist him in the case. Plaintiff also alleged in a grievance that he had been placed on HRO status as a result of his mental condition in violation of the ADA.

Plaintiff's grievance was denied because plaintiff was on HRO status for his disruptive behavior, not because of any mental condition.

Plaintiff alleges that defendants violated his rights by refusing to provide him with his "regular [prescribed] medication." Complaint (#2). P. 1.  I construe plaintiff's allegations as a claim for denial of adequate medical care under the Eighth Amendment.

In order to establish a claim that medical treatment has been denied or inadequately rendered, a prisoner must establish that there has been a "deliberate indifference to [his] serious medical needs." Estell v. Gamble, 429 U.S. 97, 104 (1976); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000); see also, Clements v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).

Whether a medical condition is serious is ordinarily a question left to physicians, Brownell v. Figel, 950 F.2d 1285, 1291 (7th Cir. 1991) Davis v. Jones, 936 F.2d 971, 992 (7th Cir. 1991), but in general a medical condition is serious if it is life threatening or poses a risk of needless pain or lingering disability if not treated at once. Id., 936 F.2d at 972.

Medical malpractice, even gross malpractice, does not amount to a violation of the Eighth Amendment, see, Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980). Thus, a dispute between a prisoner and prison officials over

the necessity for or extent of medical treatment does not raise a claim under 42 U.S.C. § 1983. See, eg., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Shields v. Kunkle, 442 F.2d 409, 410 (9th Cir. 1971); Mayfield v. Craven, 433 F.2d 873 (9th Cir. 1970); McKinney v. People of the State of California, 427 F.2d 160 (9th Cir. 1970) (per curiam) and the cases collected in the Annotation, Relief Under Federal Civil Rights Act to State Prisoner Complaining of Denial of Medical Care, 28 A.L.R. Fed. 179, 366-379 (1976).

Because courts lack medical expertise, "where prisoners receive some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgment." Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985); Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1985); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (difference of opinion between inmate and medical authorities does not give rise to a § 1983 claim); see also, Sanchez v. Vild, 891 F.2nd 240, 242 (9th Cir. 1989).

Liability may be imposed only where the decision by the medical professional is so objectively unreasonable as to demonstrate that it was not based on professional judgment. Parham v. J.R., 442 U.S. 584, 409 (1979); Estate of Conners v. O'Conner, 846 F.2d 1205, 1209 (9th Cir. 1988), cert. denied, 489 U.S. 1065 (1989).

In this case, plaintiff's claim amounts to nothing more than a difference of opinion with Dr. Tilley over the type of

medication to prescribe for plaintiff. Plaintiff's complaint refers to a "recommendation" by "Dr. Nelson" which allegedly stated that plaintiff should receive "his regular medication, Geodon." Complaint (#2) p. 1.  However, plaintiff has not established any facts concerning such a recommendation. Moreover, as noted, above a difference in medical opinion over the course of treatment, without more,  does not give rise to an Eighth Amendment claim for denial of medical care.

Assuming, *arguendo*, that plaintiff had serious medical needs,[3] he acknowledges that he was provided with medications to treat his medical condition.  Defendants' un-contorverted facts establish that plaintiff's treatment, including the medications provided to him, was "medically acceptable under the circumstances" and not "in conscious disregard of an excessive risk to [the prisoner's] health." Toguchi v. Chung, 391 F.3d at 1058 (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

The record reflects that plaintiff was provided with constitutionally adequate medical treatment awhile he was incarcerated in the Linn County Jail.  Accordingly his medical treatment claim fails as a matter of law.

Plaintiff apparently seeks to hold defendants Mueller and Baggett liable because they "upheld" Dr. Tilly's decision regarding plaintiff's medication, Complaint (#2) p. 1., and

---

[3]Plaintiff generally alleges that he suffers from "mental illness" and "anxiety," Complaint (#2) p. 1, but he has not alleged any facts that would establish he had a serious medical need.

"failing to remedy the situation." Motion to Deny (#30) p. 1.

Plaintiff's claim against defendants Mueller and Baggett is deficient for a number of reasons. However, the crux of the matter is that there was no "situation" to "remedy." Any claim against Mueller and Baggett based on the conduct of Dr. Tilly - which I have found above to have been reasonable, appropriate and constitutional- would also fail as a matter of law.

Plaintiff's Amended (Supplemental) Complaint (#38) alleges violations of his rights arising out of his HRO designation and accompanying restrictions. Plaintiff alleges that he was entitled to a hearing before he was placed on HRO status (Claim I) and that the HRO status amounted to cruel and unusual punishment (Claim II). Plaintiff further alleges that he was discriminated against in violation of the Americans with Disabilities Act ("ADA") (Claim III); that he was denied the right to order outside publications and receive newspapers (Claim IV), and that he was denied access to legal materials. (Claim V).

The only named defendants in plaintiff's Amended (Supplemental) Complaint are Tim Mueller "employed as a sheriff at Linn County Jail," and Barry Baggett "employed as a captain at Linn County Jail." Amended Complaint (#38) p. 2. Plaintiff apparently seeks to hold defendants Mueller and Baggett liable on a theory of *respondeat superior*.

It is well settled that <u>respondeat superior</u> is not a

proper basis for liability under 42 U.S.C. § 1983. <u>Monell v. Dept. of Social Services of City of New York</u>, 436 U.S. 658, 691-694 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362, 375-76 (1976); <u>King v. Atiyeh</u>, 814 F.2d 565, 568 (9th Cir. 1987). Absent an allegation that the named state officials were personally involved in the alleged deprivation of constitutional rights, a complaint under 42 U.S.C. § 1983 does not state a claim. <u>See</u>, <u>Boddie v. Coughlin</u>, 583 F. Supp. 352, 356 (S.D.N.Y. 1984); <u>Tunnell v. Office of Public Defender</u>, 583 F. Supp. 762, 767 (E.D. Pa. 1984); <u>Black v. Delbello</u>, 575 F. Supp. 28, 30 (S.D.N.Y. 1983); <u>Knipp v. Winkle</u>, 405 F. Supp. 782, 783 (N.D. Ohio 1974). A supervisor may be liable based on his or her personal involvement in the alleged deprivation, or if there is a sufficient causal connection between the supervisor's alleged wrongful conduct and the alleged deprivation, <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989), but a "supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989), citing <u>Ybarra v. Reno Thunderbird Mobile Home Village</u>, 723 F.2d 675, 680-81 (9th Cir. 1984). <u>See also</u>, <u>Shaw v. Stroud</u>, 13 F.3d 791, 799 (4th Cir. 1994) (supervisory liability only when a) actual or constructive knowledge of a pervasive and unreasonable risk of injury; b) deliberate indifference to or tacit authorization of the practice; and c)

an affirmative causal link between inaction and the injury).
Supervisory officials may also be liable if they "implement a
policy so deficient that the policy `itself is a repudiation
of constitutional rights' and is `the moving force of the
constitutional violation.'" Redman v. County of San Diego, 924
F.2d 1435, 1446 (9th Cir. 1991), cert. denied, 112 S. Ct. 972
(1992) (quoting Hansen v. Black, supra, 885 F.2d at 646, in
turn quoting Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir.
1987).

In this case, defendants' un-controverted exhibits
establish that the decisions regarding plaintiffs placement in
a special housing unit for HRO inmates (Claims I, II, and III)
were made by Sgt. Randall and Sgt. Taylor. Plaintiff's Claim
IV alleges that Sgt. Loshbaugh refused to allow him to order
"the newspaper and other publications such as books and
magazines." Amended Complaint (#38) p. 4. Plaintiff further
alleges that the prohibition on outside publications is the
jail policy and that "defendant Sheriff Mueller is the policy
maker of the Linn County Jail. Id. Plaintiff's Claim V
alleges that his requests for copies of "legal information"
and statutes was refused by the jail librarian.

Except as to Claim IV, plaintiff has not established any
facts that would prove that defendants Mueller or Baggett were
responsible for the actions giving rise to the claims alleged
in plaintiff's amended complaint or established any basis for
respondeat superior liability on the part of defendants

Mueller or Baggett.

Assuming *arguendo* that plaintiff could establish some basis for personal liability on the part of defendants Mueller and Baggett, they are entitled to judgment as a matter of law for the reasons set forth below.

Claim I:   In order to establish a due process violation plaintiff must establish that he had a liberty interest in being free from being placed on HRO status. Resnick v. Hayes 213 F.3d 443, 448 (9th Cir. 2000).

Defendants have demonstrated that plaintiff had no liberty interest under Sandin v. Conner, 515 U.S. 472, 487 (1995) in being free from segregated confinement during the time he was a convicted inmate because his HRO status did not impose an "atypical and significant hardship on (plaintiff) in relation to the ordinary incidents of prison life." Defendants have also demonstrated that plaintiff was not entitled to a hearing on his HRO status once he became a pretrial detainee, because he was not on HRO status as punishment. See, Bell v. Wolfish, 441 U.S. 520, 536-37 (1979); Demery v. Arpaio, 378 F.3d 1020, 1028 (9th Cir. 2004).

Claim II:  Plaintiff's second claim is that the restrictions placed on him as a result of his HRO status amounted to cruel and unusual punishment under the Eighth Amendment.[4]

---

[4]Plaintiff's claim is properly brought under the Eighth Amendment for the time he was serving on a conviction. His claim is properly evaluated under the Fourteenth Amendment for the time he was a pretrial detainee.  Because the standards are essentially the same under both the Eighth and Fourteenth Amendments, Carnell v.

The Eighth Amendment proscribes punishments which involve the "unnecessary and wanton infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Gregg v. Georgia, 428 U.S. 153, 173 (1976).

In order to establish liability under the Eighth Amendment, plaintiff must prove two distinct components: 1) that the plaintiff has actually suffered an extreme deprivation or is placed at a substantial risk of suffering a significant injury; 2) that the defendants acted with a sufficiently culpable state of mind (deliberate indifference). Wilson v. Seiter, 501 U.S. 294, 298 (1991); LeMaire v. Mass, 12 F.3d 1444, 1451 (9th Cir. 1993); May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997).

"The Eighth Amendment does not apply to every deprivation or even every unnecessary deprivation, suffered by a prisoner, but only that narrow class of deprivations involving "serious injury inflicted by prison officials acting with a culpable state of mind. We have described these twin elements as the "objective" and "subjective" components of an Eighth Amendment prison claim." Hudson v. McMillian, 503 U.S. 1 (1992), citing Wilson v. Seiter, 501 U.S. 294, 298 (1991).

There is a *de minimis* level of imposition with which the Constitution is not concerned. Ingraham v. Wright, 430 U.S. 651, 674 (1977). "Extreme deprivations are required to make

_____

Grimm, 74 F.3d 977, 979 (9th Cir. 1996), the court will consider the claims together and not differentiate between the different periods of incarceration.

out a conditions of confinement claim. Because routine
discomfort is 'part of the penalty that criminal offenders pay
for their offense against society,' only those deprivations
denying 'the minimal civilized measure of life's necessities'
are sufficiently grave to form the basis of an Eight Amendment
violation." Hudson v. McMillian , supra at p. 8-9, quoting
Rhodes v Chapman, supra at 347 and Wilson v. Seiter, supra at
298.

In this case, plaintiff's Eighth Amendment claims fail
because he has failed to establish any extreme deprivation or
risk of significant injury from any of the alleged conditions
of confinement. The matters complained of by plaintiff are
the type of "routine discomfort" that is part of the penalty
that criminal offenders pay for their offenses against
society, and not sufficiently grave to form the basis of an
Eighth Amendment violation. Hudson v. McMillian, supra.

Because I find that plaintiff has failed to establish the
objective prong of the two part Eighth Amendment analysis, it
is unnecessary to address in detail defendants' argument that
plaintiff has not demonstrated the subjective component of the
test, that is that defendants acted with deliberate
indifference to deprivation or injury.

However, I note that in order to prove deliberate
indifference, plaintiff must demonstrate that defendants were
subjectively aware of an obvious serious risk of harm and
ignored that risk. Farmer v. Brennan, 511 U.S. 825 (1994).

Where defendants truly do not believe a serious risk is present, there is no deliberate indifference. Id., at 884. In this case, a review of the record indicates that defendants were not deliberately indifferent to any obvious, serious risk of harm to plaintiff.

Claim III:  Plaintiff alleges that his schizoaffective bipolar disorder is a disability and that defendants discriminated against him because of his disability in violation of the Americans with Disabilities Act ("ADA").  To establish an ADA claim, plaintiff must show that he is an otherwise "qualified individual," that he was treated differently from other non-disabled individuals, and that the different treatment was because of his disability.  O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056, 1060 (9th Cir. 2007).

Plaintiff has not submitted any evidence that would establish he has a disability that substantially limits one or more of his major life activities.  Thornton v. McClatchy Newspapers, Inc., 261 F.3rd 789, 794 (9th Cir. 2001).  Even if plaintiff could establish a disability under the ADA, defendants' exhibits demonstrate that plaintiff was designated as an HRO because he exhibited hostile behavior that represented a security threat to the institution. Even if plaintiff's violent outburst was a symptom of a mental illness (disability), there were legitimate safety and security reasons to place plaintiff on HRO status.  Therefore,

plaintiff's ADA claims fails as a matter of law. <u>See</u>, <u>Pierce v. County of Orange</u>, 526 F.3d 1190, 1216-17 (9th Cir. 2008); <u>Gates v. Rowland</u>, 39 F.3d 1439, 1446-47 (9th Cir. 1994).

<u>Claim IV:</u> Plaintiff fourth claim alleges that defendants violated his First Amendment rights when Sgt. Loshbaugh denied his request to order a newspaper and other publications. As noted above, plaintiff alleges that the denial of outside publication was pursuant to the jail policy and that defendant Sheriff Mueller is the policy maker of the Linn County Jail. Amended Complaint (#38) p. 4.[5]

In <u>Turner v. Safley</u>, 482 U.S. 78, 89-93 (1987), the United States Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." <u>Id</u>., 482 U.S. at 89. A determination whether a prison regulation is reasonably related to legitimate penological objectives, in turn requires a consideration of 1) whether the regulation has a logical connection to the legitimate government interest invoked to justify it; 2) whether there are alternative means of exercising the rights that remain open to the inmates; 3) the impact that the accommodation of the asserted constitutional right will have on other inmates, guard, and prison resources; and 4) the presence or absence of ready alternatives that

_____

[5]Plaintiff concedes that defendant "Baggett is in fact *not* responsible" for the jail policy giving rise to his claim in this regard. <u>See</u>, Plaintiff's Response to defendants Motion p.7.

fully accommodate the prisoners' rights at de minimus cost to the valid penological interests.    See also, McCabe v. Arave, 827 F.2d 623, 637 (9th Cir. 1987).  In O'Lone v. Estate of Shabazz, the Court refined the second Turner factor by disavowing any requirement that the prison officials disprove the availability of alternatives. The principal subsidiary rules developed by the Ninth Circuit for applying Turner are contained in Casey v. Lewis, 4 F.3d 1516 (9th Cir. 1993) (burden is upon the inmate to demonstrate that the challenged regulation is unreasonable under Turner). See also, Friend v. Olodzieczak, 923 F.2d 126 (9th Cir. 1991); Friedman v. State of Arizona, 912 F.2d 328 (9th Cir. 1990); Harper v. Wallingford, 877 F.2d 728 (9th Cir. 1989); Standing Deer v. Carlson, 831 F.2d 1525 (9th Cir. 1987).

1.) Rational Connection: In determining whether there is a rational connection between the prison regulation and the governmental interest said to justify it, prison officials "need merely put forward a legitimate government interest and provide some evidence that the interest put forward is the actual reason for the regulation." Casey v. Lewis, supra, at 1520-21. Jail officials concern for prison security and the adoption of policies concerning security are entitled to substantial deference. Id. At p. 1521.   The asserted goal must not be "so remote as to render the policy arbitrary or irrational." Turner v. Safley, supra at 89-90.

The record reflects that the jail policy prohibits HRO

inmates from having newspapers  because newspapers have been turned into weapons in the past. I find that there is a valid, rational connection between the jail policy restricting possession of newspapers by HRO inmates  and the governmental interest of institution security.  However, defendants have not offered any rationale for the jail policy excluding outside publications in general.

2.) Alternative means: The second factor in the Turner analysis inquires whether "there are alternative means of exercising the right that remain open to prison inmates." Turner v. Safley, supra, 482 U.S. at 90.  If alternative avenues for exercising the asserted right are available, "courts should be particularly conscious of the measure of judicial deference owed to corrections officials ... in gauging the validity of the regulation." Id.; Casey v Lewis, supra, 4 F.3d at 1521.  The relevant inquiry under the second prong of Turner is not whether the inmates had other means of exercising their right (to communicate with other inmates), but whether they were denied "all means of expression." O'Lone v. Estate of Shabazz, supra, 482 U.S. at 352. Friedman v. State of Arizona, 912 F.2d 328, 332 (9th Cir. 1990), cert. denied, 498 U.S. 1100 (1991).

In this case, the rules against HRO inmates possessing newspapers impinged on only one small and circumspect aspect of plaintiff's First Amendment freedoms.  He was free to read and possess any other materials not otherwise prohibited by

the rules and allowed to possess newspapers when not on HRO status.[6]

However, the alleged policy restricting inmates from obtaining "outside reading materials" could have a significant impact on the exercise of inmates' First Amendment freedoms. The extent to which plaintiff had alternative means of practicing his First Amendment rights while he is an inmate in the Linn County Jail is not clear on the record before the court.

3.) Impact on others: The third factor in Turner is the impact that the accommodation of the asserted right would have on guards, other inmates and prison administration. Turner, 482 U.S. at 90. "When the accommodation of an asserted right will have a significant ripple effect on fellow inmates or on prison staff, the courts should be particularly deferential to the informed discretion of corrections officials." Id.

The detrimental impact on jail staff and other inmates from allowing HRO inmates to posses newspapers that other inmates had previously turned into a "bat" (weapon) is obvious and needs no analysis. However, defendants have not discussed the "impact on others" aspect of the Turner analysis as applied to plaintiff's claim regarding the general prohibition on outside reading material.

4.) Ready alternatives: "The absence of ready alternatives is

---

[6]The regulation is limited to inmates on HRO status, and not the general jail population.

evidence of the reasonableness of a prison regulation."
Turner, 482 U.S. at 90.   It is not a "least restrictive
alternative test. Id.  Prison officials do not have "to set up
and then shoot down every conceivable alternative method of
accommodating the claimant's's constitutional complaint."
Id.; O'Lone, 482 U.S. at 350 (burden is not on prison
officials to disprove the availability of alternatives).

     For the reasons discussed above (relating to jail
security and orderly administration) I find that there is no
ready alternative to the prohibition against HRO inmates
possessing newspapers.   However, there may be reasonable
alternatives to the general policy regarding outside reading
material  challenged by plaintiff in this case.

     Based on all of the foregoing, I find that the Linn
County Jail rule against HRO inmates possessing newspapers
clearly withstands a Turner v. Safley analysis and is thus
constitutional even it does in some minor respect infringe on
plaintiff's First Amendment  rights.

     Defendants have not  established a legitimate penological
interest for the blanket prohibition against outside reading
material or otherwise analyzed plaintiff's challenge to that
policy in terms of Turner v. Safely.

Claim V:  Plaintiff alleges in Claim V that defendants did not
provide him with legal materials he requested to pursue a
"civil action" and a "habeas corpus." Amended Complaint (#38)
p. 5.

Inmates do not have an abstract, freestanding right to a law library or legal assistance. <u>Lewis v. Casey</u>, 518 U.S. 343 (1996). Thus an inmate does not state a constitutional claim simply by establishing that a prison library or legal assistance program is sub par in some theoretical sense. <u>Id</u>.

In order to establish a violation of the constitutional right of access to the courts a prisoner must establish two things. First he must show that the access was so limited as to be unreasonable. <u>Vandelft v. Moses</u>, 31 F.3d 794, 797 (9th Cir. 1994). Second, he must demonstrate that the inadequate access caused him an actual injury. To establish an actual injury, the inmate must demonstrate a specific instance in which he was actually denied access to the courts. <u>Id.</u>

In this case, even if plaintiff were able to establish that the Linn County Jail law library was somehow deficient or that defendants denied him access to legal materials, he has not alleged or established any prejudice or specific instance where he was actually denied access to the court. Accordingly, plaintiff's Claim V fails as a matter of law.

Based on all of the foregoing, I find that there are no genuine issues of material fact remaining in this case and that defendants are entitled to judgment as a matter of law on all of plaintiff's claims except Claim IV against defendant Mueller and the jail policy restricting inmates from possessing "outside" publications.

Defendants' Motion for Summary Judgment (#23) is allowed;

defendant's Motion for Summary Judgment (#50) is allowed
except as to Claim IV against defendant Mueller.


        IT IS SO ORDERED

        DATED this _8_ day of February, 2010.

                                    _____
                                    Thomas M. Coffin
                                    United States Magistrate Judge